UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Coles, et al. v. Konicek & Dillon, P.C., et al
Case No. 3-24-CV-575-WWB-MCR

_____

# **EXHIBIT C**

April 28, 2025 Deposition Transcript of Amir Tahmassebi

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA


CASE NO.: 3:24-cv-575-WWB-MCR


LAVERANUES COLES, and
TROUBLE LIVIN LIFE, LLC,
a Florida Limited Liability Company,
    Plaintiffs,
vs.
KONICEK & DILLON, P.C.,
an Illinois Professional Corporation,
and AMIR TAHMASSEBI, ESQ.,
    Defendants.
_____/


DEPOSITION OF
AMIR TAHMASSEBI


| | |
|---|---|
| DATE: | APRIL 28th, 2025 |
| TIME: | 8:59 AM to 1:20 PM |
| LOCATION: | Taylor Day Law |
| | 50 North Laura Street |
| | Suite 3500 |
| | Jacksonville, FL 32202 |
| REPORTED BY: | Jessica Wright, Digital Reporter |
| NOTARY: | Rachel Tisa |
| | Notary Commission Florida/HH 314230 |
| | Commission Expires: Sept. 21st, 2026 |



```
 1                    APPEARANCES
 2   On behalf of the Plaintiffs:
 3              STEVEN M. KATZMAN, ESQ.
                KATZMAN, WASSERMAN,
 4              BENNARDINI & RUBINSTEIN, P.A.
                7900 Glades Road, Suite 140
 5              Boca Raton, FL 33434
                561-477-7774
 6              smk@kwblaw.com
 7
 8   On behalf of the Defendants:
 9              JOHN D. OSGATHORPE, ESQ.
                TAYLOR DAY LAW
10              50 North Laura Street, Suite 3500
                Jacksonville, FL 33434
11              904-356-0700
                jdo@taylordaylaw.com
12
13   Also Present via Zoom:
14              Rachel Tisa, Notary
                Notary Commission Florida/HH 314230
15              Commission Expires: September 21st, 2026
16
17
18
19
20
21
22
23
24
25
```



```
1                    I N D E X
2                                                          Page
3  PROCEEDINGS                                                6
4  DIRECT EXAMINATION BY MR. KATZMAN                          7
5
6  JURAT/ERRATA FOR AMIR TAHMASSEBI                         130
7  CERTIFICATE OF DIGITAL REPORTER                          132
8  CERTIFICATE OF TRANSCRIPTIONIST                          133
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



1  Q   And at the bottom of the 2nd page, there's a
2  date.  Can you tell us what that date is?
3  A   November 26th, 2014.
4  Q   All right.  Now, when you were mentioning the
5  areas of your practice, can you tell me whether that
6  includes land use and zoning war?
7  A   So the -- the areas of my practice are
8  extremely diverse.  And when you handle commercial cases,
9  when you handle legal malpractice cases, you get to be a
10 jack-of-all-trades.  So if you're asking me, am I a
11 zoning lawyer, no.
12 Q   Okay.  So to be clear, is it part of your
13 regular practice to appear before municipalities and
14 handle land use and zoning applications?
15 A   I -- I don't understand that question.  When
16 you say, "appear before municipalities," I -- and I'm not
17 trying to argue with you, Counsel.  I -- I -- it doesn't
18 make sense to me.  What do you mean?
19 Q   Well, we'll use the example of the City of
20 Jacksonville.  Before this case with Laveranues Coles and
21 his company, had you ever gone to a planning committee of
22 the City to seek a zoning approval or variance?
23 A   No.  That's why we hired Mr. Harden.
24 Q   When did you hire Mr. Harden?
25 A   You're going to have to show me a document.



```
 1                THE REPORTER:  Oh.
 2                MR. KATZMAN:  It's the next question.
 3                THE REPORTER:  Sorry.
 4                MR. KATZMAN:  And I think you actually had
 5       the word "the" dropped out of the preceding
 6       sentence.
 7                THE REPORTER:  Oh, sorry.
 8                MR. KATZMAN:  But that's okay.
 9                THE REPORTER:  It -- it relates to zoning
10       approvals or the land use and zoning one?
11                MR. KATZMAN:  It's the last question.
12                THE REPORTER:  Okay.  Yeah.  Okay.
13   (REPORTER READS BACK REQUESTED TESTIMONY)
14                THE WITNESS:  So -- so I -- yeah, I can
15       answer that.  I -- I -- I had involvement insofar as
16       I wanted to make sure Mr. Coles had the appropriate
17       representation in front of the City, which is where
18       Mr. Harden came in.
19   BY MR. KATZMAN:
20       Q    Okay.  Can you remind us what the date of your
21   fee agreement was?  Was it November 26th, 2014?
22       A    Yes, sir.
23       Q    And isn't it true that Mr. Harden was not
24   contacted until approximately August 24th of 2015?
25       A    Yeah, of course.  When we were in the middle of
```



```
 1      A    I -- yeah, that's her, yes.
 2      Q    Okay.
 3           MR. KATZMAN:  Why don't we go ahead and
 4      take a short break so we can change the tapes?
 5           THE VIDEOGRAPHER:  This concludes video 1.
 6      The time is 10:52 a.m.
 7  (OFF THE RECORD)
 8           THE VIDEOGRAPHER:  It's beginning of video
 9      2.  The time is 11:01 a.m. We're on the record.
10  BY MR. KATZMAN:
11      Q    Sir, between the date of your law firm's
12  engagement letter of November 26, 2014, until Mr. Harden
13  was hired in late August 2015, what legal services did
14  you and your law firm provide with respect to the land
15  use and zoning issues that Mr. Coles and his company were
16  faced with?
17      A    The services would have been limited to demand
18  letters, settlement demand letters, and then advising him
19  to seek a zoning lawyer here in Jacksonville.
20      Q    Thank you.  The next exhibit I'd like to ask
21  you about, we've marked as Number 22.
22  (EXHIBIT 22 MARKED FOR IDENTIFICATION)
23      Q    It's an October 16, 2015, email from Paul to
24  you and Laveranues.  Did you receive this, as indicated?
25      A    Yes.
```



2

# REPRESENTATION AGREEMENTPRIVATE

This agreement represents the understanding between Konicek & Dillon, P.C. (hereinafter, "the Firm") and Laveranues Coles and Trouble Livin Life LLC (hereinafter, "the Client") with respect to the provision of legal services.

## I. Legal Services

1. The Client retains the Firm and any attorneys with whom it may associate to represent and prosecute a legal action and provide legal representation against the City of Jacksonville, a Florida Municipal Corporation ("the City of Jacksonville") for issues regarding the City of Jacksonville's improper refusal to allow Client to open and operate a dancing club, bar and restaurant located at 5800 Phillips Highway near the southwest quadrant of Phillips Highway and Bowden Road. The Firm will also investigate and prosecute all viable causes of action against the City of Jacksonville relating to their discrimination of the Client and improper disruption of Clients' business.

2. The parties agree that the Firm's representation is limited to the matter and forum described in Paragraph 1 above and representation of the Client in any other matter or forum must be the subject of a new agreement. The Client recognizes that the Firm may need to engage local counsel to assist with its claims but will do so only with the express approval of Client.

## II. Legal Fees and Expenses

### A. Contingency Fee

3. The Firm agrees, at the Client's request, to accept a contingency fee as provided in this Agreement.

### B. Percentage

4. In consideration of the services rendered, the Client agrees that the Firm be paid, as a contingency fee, twenty-five percent (25%) of the value of any settlement or reward recovered at trial.

5. This agreement does not commit the Firm to appeal any decision herein, and if the


EXHIBIT 15

COLES000559

Firm later agrees to file an appeal, the fees therefore will first be negotiated by the Client and the Firm.

### C. Computation of the Contingency Fee

6.  The percentage stated above shall be computed on the basis of the gross value of the settlement or award before subtracting the cost and expenses of litigation or representation.

7.  If the settlement or award includes deferred payments or benefits, or is otherwise structured, the fee shall be payable at once, as a percentage of the present value of the settlement award, or on a deferred or structured basis, at the discretion of the Firm.

### D. Expenses

8.  It is further understood that the Client is responsible for all disbursements incurred by the Firm in connection with this representation. The Firm shall keep track of all expenses advanced. At the end of the case, the Firm shall deduct its expenses from any judgment and/or settlement received. These expenses will not include services such as Westlaw and LexisNexus.

### III. Client's Cooperation

9.  The Client expressly agrees that he will do whatever is necessary to cooperate in the preparation and litigation of this case, including but not limited to, attending a deposition and trial, meeting with the attorneys of the Firm well in advance of any Court proceedings, and providing any and all information concerning the case.

10. The Client's failure to comply with any provision of this Agreement constitutes expressed permission for the Firm to withdraw from its representation.

11. It is further understood that no representations have been made by the Firm that success is guaranteed.

12. This Agreement was executed pursuant to the laws of the State of Illinois. In case of any dispute between the Client and the Firm, both parties agree Illinois law will apply and govern.

13. The Client and the Firm agree that any change in this retainer agreement must be in writing and must be signed by both the Client and the Firm.

We have carefully read all three pages of this Agreement, and we agree that the above represents our mutual agreement.

Date: _11/26/14_

BY: _____
Laveranues Coles, Individually, and
On Behalf of Trouble Livin Life, LLC


BY:_____
KONICEK & DILLON, P.C.
Amir R. Tahmassebi, Attorney
70 W. Madison Suite 2060
Chicago, IL 60602
(312) 422-0321 (Direct)
(630) 262-9659 (Fax) amir@konicekdillonlaw.com

COLES000561