UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAVERANUES COLES and
TROUBLE LIVIN LIFE, LLC,

      Plaintiffs,

v.                               Case No.: 3:24-cv-575-JEP-MCR

KONICEK & DILLON, P.C. and
ESQ. AMIR TAHMASSEBI,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before this Court on Defendants' "Motion for Summary Final Judgment" (Doc. 30), Plaintiffs' Response in Opposition (Doc. 39), and Defendants' Reply (Doc. 43) thereto. Also before this Court are Plaintiffs' "Motion for Partial Summary Judgment" (Doc. 57), Defendants' Response in Opposition (Doc. 60), Plaintiffs' Reply (Doc. 62) thereto, and Plaintiffs' unopposed "Amended Request for Judicial Notice" (Doc. 51).

## I.

In November 2013, Plaintiff Trouble Livin Life, LLC, through its managing member, Plaintiff Laveranues Coles (collectively, "Coles"), leased a commercial property in Jacksonville, Florida, with the intention of operating a bikini bar. (Doc. 40-1 at 16:20–24; Doc. 40-3, ¶¶ 1–2). But before Coles could

open a bikini bar, he "needed a zoning exception in order to sell alcohol," "an exception to use the entire square footage of the property without providing additional parking," and "a waiver of local minimum distance requirements because of the location's proximity to two nearby churches." *Coles v. City of Jacksonville*, 769 F. App'x 851, 852 (11th Cir. 2019) (filed as Doc. 51-5).[1] Coles applied for the exceptions to the City of Jacksonville's Planning and Development Department ("City"). (Doc. 40-3, ¶ 4). Meanwhile, Coles operated the property as a restaurant, but his applications were later denied. (*Id.* ¶¶ 4–5).

Coles retained Defendant Amir Tahmassebi, a partner at co-Defendant Konicek & Dillon, P.C., an Illinois law firm, to assist with procuring the exceptions. (*Id.* ¶ 6; Doc. 40-1 at 9:14–17, 174–76). Coles then refiled his applications, but once again, they were denied. (Doc. 40-2 at 88:16–89:1; Doc. 40-3, ¶ 7). Tahmassebi advised Coles to hire a local attorney to help with zoning matters before the City. (Doc. 40-1 at 12:6–10, 49:23–50:12). Accordingly, Coles retained Paul Harden, a Florida land use attorney. (*Id.*; Doc. 40-2 at 16:8–

---

[1] Pursuant to Federal Rule of Evidence 201(c)(2), this Court grants Coles' unopposed Amended Request for Judicial Notice (Doc. 51). Therein, Coles requests judicial notice of select filings from prior federal and state lawsuits at issue in this action, and public records of Coles' lease termination. (*Id.* at 1–3). The documents are "not subject to reasonable dispute" as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—here, court dockets and Florida public records. Fed. R. Evid. 201(b). Thus, judicial notice is proper. *See Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1200 (M.D. Fla. 2022).

17:10). Harden represented Coles on appeal from the City's denial of an alcohol-sales exception, but the appeal eventually was remanded to afford Coles the opportunity to apply for a fourth exception that the City had determined to be necessary. (Doc. 40-2 at 36:1–25, 41:17–43:23).

In the end, Coles did not apply for the fourth exception. Nor did he pursue further administrative relief through the City. (Doc. 40-1 at 19:19–21, 22:21–23:8). Instead, he filed a federal civil rights lawsuit against the City, seeking a "preliminary and permanent injunction" allowing him to operate the bikini bar and monetary damages in excess of $75,000 based on lost business opportunities. (Doc. 51-1 at 19–20).

Coles claims he did not seek further administrative relief through the City because Tahmassebi represented that further efforts would be futile and recommended that Coles file a lawsuit. (Doc. 40-3, ¶ 8 ("Mr. Tahmassebi advised me to file the lawsuit and not pursue any additional efforts with the City of Jacksonville to obtain the exceptions and waivers which the City deemed necessary.")). On the other hand, Tahmassebi claims that Coles was informed of the risks of pursuing the federal lawsuit before exhausting administrate remedies but decided to pursue the lawsuit anyway. (Doc. 40-1 at 23:3–8 (testifying that Coles was given "all of the information of the risk of [moving forward against the City]. And one of those risks was that they might claim that the administrative remedies were not exhausted. Mr. Coles didn't

care. He said, 'Let's go forward.'"); *id.* at 29:16–18 ("Mr. Coles was advised the entire time that [the failure to exhaust administrative remedies] was going to be an issue. He did not want to go back to the City.")).

On December 7, 2017, Coles' federal lawsuit was dismissed as unripe because Coles had failed to obtain a final decision from the City on the four zoning exceptions and failed to establish the futility of attempting to obtain such a final decision from the City. *See Coles v. City of Jacksonville*, No. 3:15-cv-1521-J, 2017 WL 6059661, at *12–15 (M.D. Fla. Dec. 7, 2017). Coles filed a Motion for Reconsideration of the order, which was denied on April 3, 2018. (*See generally* Doc. 51-4). On April 24, 2019, the Eleventh Circuit upheld the order dismissing Coles' federal case. *See Coles*, 769 F. App'x 851.

Meanwhile, on December 22, 2017—during the pendency of the federal litigation—Coles brought a claim against the City in state court, alleging one count of promissory estoppel under Florida law. (Doc. 51-9 at 5). Coles was represented by Tahmassebi in the state lawsuit, (Doc. 40-1 at 22:7–11), which sought $500,000 in "redevelopment costs and damages from 'lost business opportunities and revenue,'" (Doc. 51-9 at 5).

Coles claims that Tahmassebi "again did not explain to [him] the concept of having to reach a final decision by the City prior to filing suit in state court." (Doc. 40-3, ¶ 9). For his part, Tahmassebi claims that "Mr. Coles, at that point in time . . . had no interest in going back to the City, had no interest in

exhausting his administrative remedies." (Doc. 40-1 at 37:2–5).

The state court granted summary judgment against Coles on September 10, 2021. (Doc. 51-9). It held that Coles' claims were not ripe, did not establish the elements of promissory estoppel, and were barred by sovereign immunity. (*See generally id.*). The First District Court of Appeal affirmed on November 14, 2022. (Doc. 51-6 at 2).

Coles initiated the instant case on June 7, 2024, alleging one count of professional negligence against Defendants (Doc. 1 at 6–8; *see also* Doc. 8 at 6–8). Coles alleges that Defendants' representation fell below the standard of care in three ways: (1) they failed to fully advise Coles of the legal requirement to exhaust administrative remedies before filing a lawsuit; (2) they advised him to file a federal lawsuit instead of seeking final approvals from the City; and (3) they advised him to file a state lawsuit despite a federal court ruling that litigation was not ripe until exhaustion of administrative remedies. (Doc. 8 at 7).

## II.

To succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties must support their assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at (c)(1)(A–B). Unless and until the movant has "properly supported the motion with sufficient evidence," the opposing party "need not respond to it with any affidavits or other evidence." *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982)

This Court cannot resolve factual disputes and must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion," resolving all reasonable doubts in the non-moving party's favor. *Id.* "A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.

In their motion, Defendants assert that they are entitled to summary judgment for two independent reasons: *first*, because Coles' claim is barred by

the statute of limitations, and *second*, because the alleged malpractice was not the but-for cause of Coles' alleged damages. (Doc. 30 at 3).

As an initial matter, the parties entered into a Representation Agreement, providing that in the "case of any dispute between [them] . . . Illinois law w[ould] apply and govern." (Doc. 40-1 at 175). However, all parties assert and assume that Florida law governs Coles' claim. (*See generally* Docs. 30, 57). Therefore, the parties have waived any contractual right to apply Illinois law to this action. *See Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) ("[A] party waives its opportunity to rely on non-forum law where it fails to timely provide— typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-forum law on which it seeks to rely."); *Chavarria v. Intergro, Inc.*, No. 8:17-cv-2229-T, 2018 WL 3427848, at *1 (M.D. Fla. July 16, 2018) (collecting cases). Consistent with the parties' arguments, this Court will apply Florida law.

Coles' complaint alleges one count of "professional negligence," (Doc. 1 at 6), which here constitutes a legal malpractice claim, *see Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 3d 111, 116 (Fla. 2d DCA 2009). Such claims have three elements: "(1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of the client's loss." *Steele v. Kehoe*, 747 So. 2d 931, 933

(Fla. 1999); *see also In re Alvarez*, 224 F.3d 1273, 1276 (11th Cir. 2000). "The third element . . . is also referred to as the concept of 'redressable harm.'" *In re Alvarez*, 224 F.3d at 1276 (quoting *Lenahan v. Russell L. Forkey, P.A.,* 702 So.2d 610, 611 (Fla. 4th DCA 1997)). Legal malpractice claims are subject to a two-year statute of limitations, which begins to run "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(4)(a) (2022).

Because "[a] cause of action accrues when the last element constituting the cause of action occurs," § 95.031(1), Fla. Stat., and because the redressable harm in a litigation-related malpractice claim "is not established until final judgment is rendered," *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998), a cause of action sounding in legal malpractice becomes discoverable, and the statute of limitations begins to run, when an adverse judgment becomes final. *See Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 42 (Fla. 2009) (plurality opinion).[2] "[T]hat is, when 'the underlying legal proceeding has been completed on appellate review.'" *Id.* at 44 (quoting *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1325 (Fla. 1990)). Florida courts call this the

---

[2] While *Larson & Larson* was a fractured decision, Florida's district courts of appeal follow the plurality opinion's guidance. *See, e.g., Arrowood Indem. Co. v. Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 134 So. 3d 1079, 1083 (Fla. 4th DCA 2014); *Integrated Broad. Servs., Inc. v. Mitchel*, 931 So. 2d 1073, 1074 (Fla. 4th DCA 2006); *Von Dyck v. Gavin*, 350 So. 3d 842, 844 (Fla. 1st DCA 2022).

"finality accrual rule." *E.g.*, *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla.), *opinion after certified question answered,* 844 F.3d 944 (11th Cir. 2016). The rule sets "a bright line for establishing when the client has suffered *some loss* as a consequence of the attorney's negligence," which is when a cause of action accrues. *Larson & Larson*, 22 So. 3d at 42. The rule "does not require that there be a determination of the *full extent* of all losses suffered by the client due to the lawyer's negligence." *Id.*

Here, the parties agree that the statute of limitations is governed by the finality accrual rule, but they dispute how it applies in light of the parallel federal-court and state-court litigation that Coles initiated against the City.

Defendants argue that Coles' two-year statute of limitations began to run on July 23, 2019—ninety days after the Eleventh Circuit affirmed the dismissal of the federal claim; *i.e.*, the deadline for seeking certiorari in the Supreme Court to review the Eleventh Circuit's decision. *See* 28 U.S.C. § 2101(c); Sup. Ct. R. 13.3. At that point, the federal judgment against Coles indisputably had attained finality.[3] And Coles, therefore, discovered or should

---

[3] Indeed, the judgment became final under the finality accrual rule earlier than Defendants posit. "A judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing." *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 n.2 (Fla. 1998). In Coles' federal suit, an appeal was taken, the Eleventh Circuit affirmed the district court's judgment on April 24, 2019, and the time for filing petitions for rehearing of the Eleventh Circuit's decision ran until May 8, 2019, with Coles not filing any such petition. *See Coles*, 769 F. App'x 851 (affirming on April 24, 2019); Fed. R. App. P. 40(d)(1) ("[A]ny petition for panel rehearing or

have discovered a cause of action predicated on Defendants' alleged advice to file a lawsuit in lieu of pursuing further efforts with the City's zoning review apparatus. On this timeline, Coles' action is barred by the two-year statute of limitations, which expired in 2021—well before Coles commenced this malpractice action in 2024.

Coles argues, on the other hand, that the two-year statute of limitations began to run on November 14, 2022, because a cause of action did not accrue until *all* of his underlying legal proceedings achieved finality—that is, when he received an adverse judgment from the First District Court of Appeal.[4] According to Coles, his federal and state lawsuits sought the same damages for the same denial of zoning approvals, so a successful state-court disposition could have mooted any malpractice claim that had accrued against Defendants. On this timeline, Coles' action is not barred by the statute of limitations.

Fatal to Coles' argument is the fact that his state-court lawsuit "had no

---

rehearing en banc must be filed within 14 days after judgment is entered . . . ."). Thus, the federal judgment attained finality on May 9, 2019. *See Silvestrone*, 721 So. 2d at 1175 n.2 (stating that appealed judgments become final upon "the expiration of the time for filing motions for rehearing").

[4] Coles seems to suggest that the statute of limitations began to run on November 14, 2022, when the First District Court of Appeal affirmed the judgment in favor of the City. However, the First District's judgment did not become final until the rehearing motion deadline ran fifteen days later, on November 29, 2024. *See Silvestrone*, 721 So. 2d at 1175 n.2; Fla. R. App. P. 9.930(a)(1), 9.420(e); Fla. R. Gen. Prac. & Jud. Admin. 2.514(a).

effect on the finality of the final judgment in [his federal] action." *Larson & Larson*, 22 So. 3d at 43. The Supreme Court of Florida has considered and rejected the argument that "the accrual of the cause of action [sounding in legal malpractice] occurs only when there is no further ongoing litigation related to the underlying action." *Id.* In the *Larson & Larson* plurality's words, adopting such a rule would be "inconsistent with the provision in section 95.11(4)(a) that 'the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.'" *Id.* In the instant case, that point in time occurred when Coles' federal judgment became final following the Eleventh Circuit's affirmance, and upon expiration of the deadline for filing a petition for rehearing of the Eleventh Circuit's decision.

The *Larson & Larson* plurality also addressed the concern—raised by Coles here—that its bright-line rule could unduly disrupt an ongoing attorney-client relationship. 22 So. 3d at 44. The argument goes straightforwardly: In some circumstances, the finality accrual rule may force a client to initiate malpractice litigation against his attorney while the attorney is still representing the client on matters collateral to those at issue in the malpractice claim. And this would put the client in the undesirable position of asserting inconsistent legal arguments in the parallel cases. The *Larson & Larson* plurality, however, dismissed these concerns, stating that "[i]n the

usual case, collateral matters will be resolved" within the two-year statute of limitations. *Id.* at 45. And even in the unusual case, where collateral matters are still being litigated two years after an adverse judgment has become final, the plurality wrote that a client's cause of action continues to accrue "once a judgment adverse to [him] has reached the point of finality." *Id.*

Perhaps, however, in the most unusual case, multiple, independently appealable final judgments may each separately trigger multiple limitations periods for the accrual of distinct malpractice claims. *Id.* at 47. For example, the *Larson & Larson* plurality opined that a "bifurcated approach" was warranted where two separate malpractice actions accrued—one for a final adverse judgment on the merits of the underlying case, and one for a collateral, final adverse judgment on sanctions. *Id.* at 48. Here, no party advocates for such an approach, and for two additional reasons, the Court declines to apply it in this case.[5]

---

[5] Even if this Court were inclined to apply such an approach, divide Coles' claim (with leave for Coles to make conforming amendments to the complaint), and contemplate the running of different limitations periods with respect to the federal and state judgments, he cannot establish that the state litigation ultimately would have prevailed. To be sure, Coles argues that further efforts with the City would have resulted in some kind of final determination—whether favorable or unfavorable—thus satisfying the exhaustion requirement and removing any exhaustion-related bar to the state suit. (*Id.* Doc. 39 at 14–16). However, he still cannot establish that the state litigation would have succeeded on the merits. Coles has moved this Court to take judicial notice of the state trial court's order granting the City's summary-judgment motion in the state litigation, an order that the First District Court of Appeal per curiam affirmed. (Doc. 51-9). There is no material dispute as to the basis of the summary-judgment order in state court. That order granted judgment to the City on three independent grounds, only one of which was a lack of ripeness due to failure to exhaust administrative remedies. (*Id.* at 5–6). As to the other two grounds—failure to

First, "a legal malpractice cause of action accrues as soon as the client can 'determine if there was any actionable error by the attorney.'" *Id.* at 44 (quoting *Peat, Marwick, Mitchell & Co.*, 565 So. 2d at 1325). "It cannot plausibly be argued that a client who is subject to . . . an enforceable judgment and thus faces the immediate prospect of execution of the judgment has not 'discovered' the harm caused by the lawyer's negligence." *Id.* at 48. Therefore, Coles discovered or should have discovered a claim for malpractice—and he only alleges one such claim—when his federal judgment became final. Moreover, while Coles alleges that his single claim for malpractice arose from three distinct acts, each of those alleged acts pertained to alleged advice to pursue litigation in court rather than exhaustion with the City, and each alleged act occurred before the federal judgment attained finality, thereby putting Coles on notice that redressable harm had occurred with respect to all three of the alleged acts of malpractice.

Second, Florida's bright-line finality accrual rule hinges on the occurrence of *some* redressable harm, and not the ascertainment of the precise amount of the harm. The Supreme Court of Florida has rejected a case-by-case "approach to determining when a plaintiff knew it had suffered 'redressable

---

establish the elements of promissory estoppel, and the City's sovereign immunity as a bar to suit (*id.* at 6–10)—Coles offers no explanation how an absence of the alleged malpractice would have enabled him to overcome those two defects in his suit.

harm' in litigation malpractice cases, and the Court [has] instead opted for
'certainty'" in when a cause of action accrues. *Arrowood Indem. Co. v. Conroy,
Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 134 So. 3d
1079, 1082 (Fla. 4th DCA 2014) (quoting *Silvestrone*, 721 So. 2d at 1175–76)).
At the same time, the court has disclaimed the need for certainty as it relates
to the "full extent of damages suffered by the client due to the lawyer's
negligence." *Larson & Larson*, 22 So. 3d at 42. So, while Coles argues that a
successful state-court disposition could have mooted any malpractice claim
that had accrued against Defendants, Florida law required him to bring a claim
for malpractice within two years of discovering *some final loss* as a consequence
of Defendants' alleged malpractice—not within two years of discovering the
full extent of his losses, and not within two years of discovering he could not
mitigate his losses through another lawsuit. *See id.*

Coles appears to contend that a more recent Florida Supreme Court
decision has altered the finality accrual analysis. In particular, he asks this
Court to apply the factors test presented in *Kipnis v. Bayerische Hypo-Und
Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla. 2016), to reach his preferred accrual
date for a malpractice cause of action. However, the *Kipnis* test governs
*whether* the finality accrual rule applies, not *how* it applies. *See id.* at 862 ("To
determine whether to apply the rule in any particular case, we have considered
a series of factors and applied the finality accrual rule where those factors

favored the rule's application."). Here, there is no dispute that the rule applies. The *Kipnis* test is, therefore, irrelevant.

To be sure, the Florida Supreme Court does not appear to have addressed the finality accrual rule's application when a representation entailed a land-use matter and two related lawsuits. However, the principles set forth in the Court's decision in *Larson & Larson* squarely apply here. The plurality rejected the notion that "accrual of the cause of action occurs only when there is no further ongoing litigation related to the underlying action." *Larson & Larson*, 22 So. 3d at 43. Thus, when the merits of the underlying action had reached a final judgment—even if a collateral issue of sanctions had not—the plaintiff "had knowledge of the harm it suffered as a result and the malpractice cause of action accrued with respect to the damages entailed by that adverse determination." *Id.* And the statute of limitations for such malpractice claims is not "held in abeyance until the conclusion of any collateral litigation in which the client might assert a position inconsistent with the malpractice claim." *Id.*

Even when "collateral post-trial issues remain pending," if "the client is subject to an enforceable final judgment which resulted from a lawyer's malpractice," the cause of action related to that malpractice has accrued. *Id.* at 46; *see also Otero v. Arcia*, 264 So. 3d 1140, 1142 (Fla. 5th DCA 2019) (holding that the plaintiffs had met "the bright-line requirement of *Silvestrone*" when they established "some loss" from the defendant's negligence; namely, an

adverse final judgment); *R.S.B. Ventures, Inc. v. Berlowitz*, 211 So. 3d 259, 263–64 (Fla. 4th DCA 2017). It would require "willing suspension of disbelief to conclude that there is no redressable harm" once a final adverse judgment has been reached, and at that point, "it can no longer be said that the malpractice claim is hypothetical and damages are speculative." *Larson & Larson*, 22 So. 3d at 46. (quotations omitted).

Coles nonetheless cites *Forest v. Batts*, 228 So. 3d 156 (Fla. 4th DCA 2017), for the principle that "*all* underlying legal proceedings" must be completed for a cause of action to accrue. (Doc. 39 at 7 (citing *Forest*, 228 So. 3d 156). However, *Forest* offers Coles no support. There, the Florida appellate court dealt with a situation where a final judgment had been appealed on grounds unrelated to the later malpractice claim, and the appeal had resulted in a remand and an amended final judgment that was also appealed (with the appeal then voluntarily dismissed). *Forest*, 228 So. 3d at 156–57. The trial court held that the statute of limitations began to run when it entered the first final judgment, rather than when it entered the amended final judgment following remand from the first appeal. *Id.* However, the appellate court reversed, rejecting the notion "that a judgment may be final for purposes of the running of the statute of limitations for a malpractice action as to some issues but not others." *Id.* at 159. It held that the judgment "was truly final" only once the second appeal of the amended final judgment was voluntarily dismissed.

*Forest* is clearly distinct from this case, where the federal lawsuit reached a final judgment that the state-court proceedings could not disturb.

In the final analysis, Coles' argument that the possibility of a remedy from the state lawsuit prevented accrual of any malpractice claim is unpersuasive.[6] Indeed, "[t]he hypothetical possibility of obtaining a modification of the . . . judgment does not change the fact that redressable harm occurred at the moment the . . . judgment became final." *Miller v. Finizio & Finizio, P.A.*, 226 So. 3d 979, 984 (Fla. 4th DCA 2017). When a judgment becomes final and the plaintiff "suffered *some* loss as a result of the defendants' alleged malpractice," the cause of action accrues. *Id.*

While success in the state lawsuit may have provided Coles with a damages award, at most, it would have reduced the amount of amount of his damages. (*See* Docs. 51-1, 51-7). "Put simply, while the possibility of obtaining a modification of the [judgment] . . . may be relevant to determining the *amount* of damages, it does not affect when the legal malpractice claim accrued." *Miller*, 226 So. 3d at 984; *see also Silvestrone*, 721 So. 2d at 1175 (holding that accrual occurs when a final adverse judgment is reached because

---

[6] Coles' argument also fails to present any workable standard for determining when a statute of limitations period begins. Theoretically, almost any malpractice could be remedied, at least in part, at any time through settlement of a subsequent claim, but that cannot mean that redressable harm never occurred.

until that point, the trial court could "reconsider and . . . alter or retract any of its nonfinal rulings").

\* \* \*

In sum, the two-year statute of limitations ran in 2021 and bars Coles' malpractice claim. Therefore, there is no genuine dispute as to any material fact, and Defendants have demonstrated entitlement to judgment as a matter of law. And because Defendants prevail on their statute-of-limitations argument, this Court need not consider their alternative causation arguments.

## IV.

Like Defendants, Coles seeks summary judgment on the matter of whether the malpractice claim is barred by Florida's statute of limitations. (Doc. 57 at 2–3). In addition, Coles asks this Court to grant summary judgment on the futility of seeking administrative remedies and Defendants' First,[7] Fourth, and Fifth affirmative defenses of comparative negligence. (*Id.* at 1–2). In light of this Court's grant of summary judgment to Defendants, and for the reasons set forth above, Coles' motion is due to be denied.

## V.

In light of the foregoing, it is **ORDERED:**

1. Plaintiffs' unopposed "Amended Request for Judicial Notice" (Doc. 51)

---

[7] Defendants later withdrew their First Affirmative Defense. (Doc. 61 at 1).

is **GRANTED**.

2. Defendants' "Motion for Summary Final Judgment" (Doc. 30) is

**GRANTED**.

3. Plaintiffs' "Motion for Partial Summary Judgment" (Doc. 57) is

**DENIED**.

4. The Clerk is directed to enter judgment in favor of Defendants,

terminate all pending motions and deadlines as moot, and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida on January 16, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record